# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD LEE WILLIAMS, | CASE NO. CV F 12-2000 LJO GSA |
| Plaintiff, | **ORDER ON DNC'S F.R.Civ.P. 12 MOTION TO DISMISS** |
| vs. | (Doc. 5.) |
| PAUL THOMPSON, et al., | |
| Defendants. | |
| _____/ | |

### PRELIMINARY STATEMENT TO THE PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact the offices of United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider, and if necessary, to reconsider consent to a U.S. Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases. A Magistrate Judge consent form is available on this Court's website.

**INTRODUCTION**

Defendant DNC Parks & Resorts at Yosemite, Inc. ("DNC") seeks to dismiss plaintiff Edward Lee Williams' ("Mr. Williams'") negligence claims in that Mr. Williams assumed risk of his snowboarding injuries when defendant DNC employee Paul Thompson ("Mr. Thompson") collided with Mr. Williams. Mr. Williams responds that assumption of risk does not apply to Mr. Thompson's recklessness and that Mr. Williams' operative complaint ("complaint") satisfies federal pleading requirements. This Court considered DNC's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the March 6, 2013 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES without prejudice this action and all claims.

**BACKGROUND**

DNC provides lodging, retail and food services at Yosemite National Park ("YNP") and employed Mr. Thompson at the Badger Pass Ski Resort ("Badger Pass") in YNP. The complaint alleges that Mr. Williams is an experienced snowboarder and that on March 5, 2012, Mr. Williams snowboarded with his girlfriend whom he was teaching to snowboard "when suddenly and without warning [Mr. Thompson] slammed into Plaintiff at a high and unsafe rate of speed causing Plaintiff to suffer severe personal injuries." The complaint further alleges that at the time of the collision, Mr. Thompson was working as a DNC employee and breached duties of care as to safe snowboarding in that Mr. Thompson acted recklessly. The complaint alleges negligence and negligent infliction of emotional distress ("NIED") claims and seeks to hold DNC liable under respondeat superior.

**F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

DNC argues that it escapes vicarious liability in that Mr. Williams assumed inherent risks of snowboarding, such as colliding with an incautious Mr. Thompson who snowboarded too fast. Mr. Williams contends that his claims survive in that primary assumption of risk does not apply to injury caused by recklessness.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development*

1  *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either
2  a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal
3  theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of*
4  *Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency
5  of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).
6      In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to
7  the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff
8  can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80
9  F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that
10 are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*
11 *Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not
12 assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.*
13 *Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove
14 facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been
15 alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*,
16 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that
17 the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney,*
18 *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).
19     A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires
20 more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not
21 do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations
22 omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most
23 favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan*
24 *Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain
25 either direct or inferential allegations respecting all the material elements necessary to sustain recovery
26 under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers,*
27 *Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).
28     In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court

explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

With standards in mind, this Court turns to DNC's challenges to its vicarious liability for Mr. Thompson's alleged negligence.

### Assumption Of Risk

#### *Primary And Secondary*

DNC argues that Mr. Williams assumed the risk of his snowboarding injuries to relieve Mr. Thompson and in turn DNC of liability. Mr. Williams acknowledges that assumption of risk is an "exception" to the general rule of a duty of care owed to others but argues that assumption of risk does not apply to the complaint's alleged facts.

Under California law, assumption of risk is classified as primary or secondary. *See Kahn v. East Side Union High School Dist.*, 31 Cal.4th 990, 1003, 75 P.3d 30 (2003). Primary assumption of risk addresses "whether the defendant actually owed the plaintiff a duty of care." *Kahn*, 31 Cal.4th at 1003, 75 P.3d 30. Secondary assumption of risk addresses situations "in which the defendant had breached a duty of care but where the issue was whether the plaintiff had chosen to face the risk of harm presented by the defendant's breach of duty." *Kahn*, 31 Cal.4th at 1003, 75 P.3d 30. With secondary assumption of risk, liability can "be resolved by applying the doctrine of comparative fault, and the plaintiff's decision to face the risk would not operate as a complete bar to recovery. In such a case, the plaintiff's knowing and voluntary acceptance of the risk functions as a form of contributory negligence." *Kahn*, 31 Cal.4th at 1003, 75 P.3d 30. However, with primary assumption of risk, "the plaintiff's claim should be barred entirely because of a legal determination that the defendant did not owe a duty to protect the plaintiff from the particular risk of harm involved in the claim." *Kahn*, 31 Cal.4th at 1004, 75 P.3d 30.

Stated another way, primary assumption of risk bars liability "where, by virtue of the nature of the activity and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injury." *Knight v. Jewett,* 3 Cal.4th 296, 314-315, 11 Cal.Rptr.2d 2 (1992). "Primary assumption of risk arises where a plaintiff voluntarily participates in an activity or sport involving certain inherent risks; primary assumption of risk does bar recovery because no duty of care is owed as to such risks." *Connelly v. Mammoth Mountain Ski Area,* 39 Cal.App.4th 8, 11, 45 Cal.Rptr.2d 855 (1995). "The primary assumption of risk doctrine rests on a straightforward policy foundation: the need to avoid chilling vigorous participation in or sponsorship of recreational activities by imposing a tort duty to eliminate or reduce the risks of harm inherent in those activities." *Nalwa v. Cedar Fair, L.P.*, 55 Cal.4th 1148, 150 Cal.Rptr. 3d 551, 557 (2012).

"The existence and scope of a defendant's duty of care in the primary assumption of risk context 'is a legal question which depends on the nature of the sport or activity . . . and on the parties' general relationship to the activity, and is an issue to be decided by the court, rather than the jury.'" *Connelly*, 39 Cal.App.4th at 11-12, 45 Cal.Rptr.2d 855 (quoting *Knight*, 3 Cal.4th at 313, 11 Cal.Rptr.2d 2). Application of the primary assumption of risk doctrine in a sports context is a question of law. *Moser v. Ratinoff*, 105 Cal.App.4th 1211, 1219, 130 Cal.Rptr.2d 198 (2003); *see Lewis v. Mammoth Mountain*

*Ski Area*, 2009 WL 426595, *4 (E.D. Cal. 2009) ("The issue of assumption of the risk is a question of law, which may properly be decided on a motion for summary judgment.")

An activity is a "sport" to which the primary assumption of risk doctrine applies if the activity "is done for enjoyment or thrill, requires physical exertion as well as elements of skill, and involves a challenge containing a potential risk of injury." *Moser v. Ratinoff*, 105 Cal.App.4th 1211, 1221, 130 Cal.Rptr.2d 198 (2003).

As to duty, "defendants generally have no legal duty to eliminate (or protect plaintiff against) risks inherent in the sport itself" but "may not increase the likelihood of injury above that which is inherent." *Moser*, 105 Cal.App.4th at 1222, 130 Cal.Rptr.2d 198 (citing *Knight*, 3 Cal.4th at 315, 11 Cal.Rptr.2d 2). Conduct is not inherent in a sport if it is "totally outside the range of the ordinary activity involved in the sport" and "if the prohibition of that conduct would neither deter vigorous participation in the sport nor otherwise fundamentally alter the nature of the sport." *Moser*, 105 Cal.App.4th at 1222, 130 Cal.Rptr.2d 198 (quoting *Freeman v. Hale*, 30 Cal.App.4th 1388, 1394, 36 Cal.Rptr.2d 418 (1994)).

"In some situations, however, the careless conduct of others is treated as an "inherent risk" of a sport, thus barring recovery by the plaintiff." *Knight*, 3 Cal.4th at 316, 11 Cal.Rptr.2d 2. The California Supreme Court has further explained:

> Rather than being dependent on the knowledge or consent of the particular plaintiff, resolution of the question of the defendant's liability . . . turns on whether the defendant had a legal duty to avoid such conduct or to protect the plaintiff against a particular risk of harm. As already noted, the nature of a defendant's duty in the sports context depends heavily on the nature of the sport itself. Additionally, the scope of the legal duty owed by a defendant frequently will also depend on the defendant's role in, or relationship to, the sport.
>
> . . .
>
> The overwhelming majority of the cases, both within and outside California, that have addressed the issue of coparticipant liability in such a sport, have concluded that it is improper to hold a sports participant liable to a coparticipant for ordinary careless conduct committed during the sport – for example, for an injury resulting from a carelessly thrown ball or bat during a baseball game – and that liability properly may be imposed on a participant only when he or she intentionally injures another player or engages in reckless conduct that is totally outside the range of the ordinary activity involved in the sport. (*See, e.g., Gauvin v. Clark* (1989) 404 Mass. 450 [537 N.E.2d 94, 96-97] and cases cited.)
>
> In reaching the conclusion that a coparticipant's duty of care should be limited in this fashion, the cases have explained that, in the heat of an active sporting event like baseball or football, a participant's normal energetic conduct often includes accidentally careless behavior. The courts have concluded that vigorous participation in such sporting

6

events likely would be chilled if legal liability were to be imposed on a participant on the basis of his or her ordinary careless conduct. The cases have recognized that, in such a sport, even when a participant's conduct violates a rule of the game and may subject the violator to internal sanctions prescribed by the sport itself, imposition of legal liability for such conduct might well alter fundamentally the nature of the sport by deterring participants from vigorously engaging in activity that falls close to, but on the permissible side of, a prescribed rule.

*Knight*, 3 Cal.4th at 316-319, 11 Cal.Rptr.2d 2.

### **Snowboarding**

DNC notes that primary assumption of risk applies to skiing snowboarding collisions.

The California Court of Appeal has identified skiing risks:

The risks inherent in snow skiing have been well catalogued and recognized by the courts. Those risks include injuries from variations in terrain, surface or subsurface snow or ice conditions, moguls, bare spots, rocks, trees, and other forms of natural growth or debris. They also include collisions with other skiers, ski lift towers, and other properly marked or plainly visible objects and equipment.

*Lackner v. North*, 135 Cal.App.4th 1188, 1202, 37 Cal.Rptr.3d 863 (2006).

*Lackner* involved a defendant snowboarder who collided with a plaintiff skier who stood off a ski run in a flat area used by skiers and snowboarders to rest prior to taking off on a connecting run. *Lackner*, 135 Cal.App.4th 1201-1202, 37 Cal.Rptr.3d 863. The California Court of Appeal observed that the defendant snowboarder was "aware that he was supposed to be looking for skiers downhill of him . . . and knew that colliding with another skier or snowboarder while going at a high rate of speed carries a high degree of risk of serious physical injury." *Lackner*, 135 Cal.App.4th 1200, 37 Cal.Rptr.3d 863. The Court of Appeal concluded: "Under these circumstances, there is a triable issue of fact as to whether or not the collision was inadvertent and unavoidable because North lost control of his snowboard as a result of a risk inherent in snowboarding." *Lackner*, 135 Cal.App.4th 1201, 37 Cal.Rptr.3d 863.

DNC relies on *Matro v. Petrick*, 93 Cal.App.4th 83, 112 Cal.Rptr.2d 185 (2001), where the defendant snowboarder collided with plaintiff skier at 30-35 mph. The California Court of Appeal found that the defendant snowboarder "owed no duty of care to a nonsnowboarder occupying an area properly utilized by snowboarders." *Matro*, 93 Cal.App.4th at 89, 112 Cal.Rptr.2d 185. The Court of Appeal further explained:

Accordingly, given the nature of the activity of snowboarding (descending a

>snow-covered mountain), and the relationship of Mastro [plaintiff] to that activity (descending the same snow-covered mountain on skis), under *Knight* it is clear Petrick [defendant] owed no legal duty to protect Mastro from the particular risk of harm that caused Mastro's injuries (i.e., that a snowboarder may be negligent or careless). Put more generally, one who is pursuing his sport in an appropriate venue owes no duty of care to those who choose to occupy the same venue to engage in their (possibly different) activity simultaneously. Thus, to the extent Mastro is "assuming a risk," the risk he is assuming is that he is occupying a venue with others that owe him no duty of care.

*Matro*, 93 Cal.App.4th at 90, 112 Cal.Rptr.2d 185; *see Towns v. Davidson*, 147 Cal.App.4th 461, 469, 54 Cal.Rptr.3d 568 (2007) (Employment status of ski resort employee who injured plaintiff when skiing was irrelevant in that "the inherent risks of injury from skiing down a snow covered mountain include accidentally careless conduct by other skiers resulting in collisions. This risk is so inherent and obvious it goes without saying plaintiff assumed that risk no matter who the other skiers may be.")

DNC argues that Mr. Thompson owed no duty "to prevent a collision with another snowboarder on the slope" in the absence of allegations that Mr. Thompson's conduct was "totally outside the range of ordinary" snowboarding. DNC contends that allegations that Mr. Thompson snowboarded too fast are insufficient given reasonableness to expect that "some snowboarders will be traveling too fast for their particular circumstances or skill level." DNC characterizes failure to look out for snowboarders as an "inherent" risk of snowboarding, and further characterizes the complaint to allege a "garden variety" collision.

DNC continues that Mr. Thompson's alleged disregard of area safety rules "does not render primary assumption of risk doctrine inapplicable" in that the critical factor is conduct "totally outside the range of ordinary conduct." DNC notes that the complaint alleges Mr. Thompson's conduct "that is assumed as part of the activity." DNC characterizes as immaterial allegations that Mr. Thompson acted within the scope of his DNC employment given the absence of allegations of Mr. Thompson's job function. DNC concludes that in the absence of facts of Mr. Thompson's liability, DNC is not vicariously liable.

Mr. Williams argues that Mr. Thompson owed and breached his duty "to keep a proper look out for other snowboarders," "to prevent injury to others, and to not increase the inherent risks of the sport of snowboarding." Mr. Williams argues the complaint sufficiently alleges recklessness given that "suddenly and without warning Paul Thompson slammed into Plaintiff at a high and unsafe rate of

speed." Mr. Williams concludes that "a defendant snowboarder is liable to a plaintiff if he engaged in reckless conduct, and that is what plaintiff has alleged in the pleadings stage of this case."

The gist of Mr. Williams' support for the complaint's claims is that its reference to recklessness vis a vis Mr. Thompson's "high and unsafe rate of speed" is sufficient to overcome assumption of the risk. The complaint lacks sufficient facts to reach such conclusion. The complaint merely alleges that Mr. Williams snowboarded with and taught his girlfriend and that Mr. Thompson slammed into Mr. Williams. There are no allegations to suggest that the collision occurred in a resting area similar to the facts in *Lackner*. In fact, the complaint raises inferences that the collision occurred on a ski run to place Mr. Thompson in a zone of assumption of risk. At bottom, the complaint lacks sufficient facts to withstand an assumption of risk defense.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES without prejudice this action and all claims;
2. ORDERS the Mr. Williams, no later than March 15, 2013, to file and serve a first amended complaint; and
3. ORDERS DNC, no later than April 3, 2013, to file and serve a response to the first amended complaint.

If Mr. Williams elects to file a first amended complaint, this Court ADMONISHES Mr. Williams to pursue only claims based on sufficient supporting facts and law and that this Court will grant Mr. Williams no further attempts to plead claims. If Mr. Williams elects not to file a first amended complaint, this Court will close this action.

IT IS SO ORDERED.

**Dated:   February 28, 2013           /s/  Lawrence J. O'Neill**
                                                    UNITED STATES DISTRICT JUDGE